IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONI DANIEL and LARRY DANIEL, <br><br> Plaintiffs, <br><br> vs. <br><br> CHRISTIAN CARE MINISTRY, INC., <br><br> Defendant. | Case No.  3:21-cv-484-MAB |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT
PURSUANT TO RULES 12(b)(1), 12(b)(2), 12(b)(3), AND 12(b)(6),
MOTION TO COMPEL ARBITRATION,
AND MOTION FOR AWARD OF ATTORNEYS FEES**

TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     THE ALLEGATIONS OF THE COMPLAINT, INCLUDING THE PARTIES'
        AGREEMENT TO PURSUE ONLY CHRISTIAN ALTERNATIVE DISPUTE
        RESOLUTION AND NOT TO SUE EACH OTHER  ................................................... 1

III.    ARGUMENT ................................................................................................................... 7

        A.    The Law Strongly Favors Alternative Dispute Resolution, Including Arbitration. 7

        B.    The Parties Unequivocally Agreed to Alternative Dispute Resolution and Further
              Agreed Not to Sue Each Other.............................................................................. 8

        C.    Because the Daniels Agreed that Binding Arbitration Would Be Their Exclusive
              Legal Remedy, Their Complaint Must Be Dismissed Under Rule 12(b)(1),
              12(b)(2), and 12(b)(3) ......................................................................................... 10

        D.    Because the Daniels Agreed that Binding Arbitration Would Be Their Exclusive
              Legal Remedy, This Court Should Compel Arbitration under the Federal
              Arbitration Act and Then Dismiss This Case ...................................................... 11

        E.    The Daniels' Only Apparent Counterarguments Are Nonstarters ........................ 13

        F.    Even in the Absence of the Parties' Binding Arbitration Agreement, the
              Complaint Would Need to Be Dismissed Under Rule 12(b)(6) for Other Reasons
              ............................................................................................................................. 15

        G.    CCM Is Entitled to Recover Its Attorneys Fees for Having to Defend This Matter
              in Court Because the Daniels Unequivocally Agreed Not to Sue CCM............... 16

IV.     CONCLUSION.............................................................................................................. 20

I.      INTRODUCTION

Defendant, Christian Care Ministry, Inc. ("CCM"), brings this motion to dismiss, and

motion to compel arbitration, regarding the claims of Plaintiffs, Joni and Larry Daniels (the

"Daniels"), based on the parties' agreement that any disputes between them would be resolved

exclusively by Christian mediation and arbitration, and not in court.  As part of Medi-Share, a

ministry administered by CCM though which Christian members voluntarily and mutually share

the cost of their medical bills among the membership, CCM and the Daniels agreed to a

comprehensive Christian alternative dispute resolution process, and the Daniels expressly agreed

that they would "bring no suit, legal claim or demand of any sort against CCM in the civil court

system."  Disregarding their written, signed agreements, the Daniels filed this lawsuit seeking to

recover over $150,000 in medical bills that they contend CCM failed to pay in breach of the

Medi-Share Guidelines—the very Guidelines that contain their agreements that Christian

arbitration would be their exclusive remedy.  Because the Daniels' claims are not properly

brought in court, their Complaint should be dismissed, with an order compelling them to pursue

arbitration.  In addition, because there is no good faith basis for bringing claims against CCM in

court, CCM is entitled to recover the attorneys fees it has expended and will expend in defending

this improper litigation.

II.     THE ALLEGATIONS OF THE COMPLAINT, INCLUDING THE PARTIES'
        AGREEMENT TO PURSUE ONLY CHRISTIAN ALTERNATIVE DISPUTE
        RESOLUTION AND NOT TO SUE EACH OTHER [1]

---

[1] To the extent this motion is brought under Rule 12(b)(6), CCM accepts as true, as it
must for purposes of such motion, the allegations of the Complaint, unless the allegations are
inconsistent with the Medi-Share Guidelines attached to the Complaint.  *See Northern Ind. Gun
& Outdoor Shows, Inc. v. South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled
rule that when a written instrument contradicts allegations in the complaint to which it is
attached, the exhibit trumps the allegations."); *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A
plaintiff may plead himself out of court by attaching documents to the complaint that indicate
that he or she is not entitled to judgment."); *Graue Mill Dev. Corp. v. Colonial Bank & Trust*

CCM is a not-for-profit religious entity incorporated under the laws of Florida and with its principle place of business in Florida.  (*See* Pls.' Compl. ["Compl."] at 1 & ¶ 2 [2]; *see also* Dkt. 1, Ex. D ¶¶ 3-4.)  CCM is a Christian ministry that administers a program called Medi-Share, under which its members' medical bills are voluntarily shared among the membership, pursuant to detailed Medi-Share Guidelines.[3]  (*See, e.g.*, Guidelines at 2, 10.)  "The purpose of

---

*Co.*, 927 F. 2d 988, 991 (7th Cir. 1991) (concluding that when documents attached to a complaint contradict the allegations of the complaint, the document controls on a Rule 12(b)(6) motion).

With respect to CCM's arguments brought under provisions other than Rule 12(b)(6), the Court may consider evidence beyond the face of the Complaint.  *See* Fed. R. Civ. P. 12(d); *Silha v. Act, Inc.*, 807 F. 3d 169, 173 (7th Cir. 2015).

[2] The Daniels' Complaint is Exhibit A to Dkt. 1 (CCM's Notice of Removal), but it is also attached hereto as Exhibit A for ease of reference.

[3] The Complaint attaches a copy of the Medi-Share Guidelines based on which the Daniels bring their claims (the "2019 Guidelines").  (*See* Compl., Ex. A.)  Because "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes," Fed. R. Civ. P. 10(c), this Court may rely on the provisions of the 2019 Guidelines in ruling on this motion to dismiss (including under Rule 12(b)(6)).

As a technical matter, the 2019 Guidelines may not be the applicable Guidelines, because they became effective in July 2019, after the Daniels became members of CCM (in January 2018) and after the time of the relevant car accident (in November 2018).  (*See* Compl., Ex. A, final page ["Effective July 2019"].)  The Medi-Share Guidelines in place at the time the Daniels joined CCM would have been the Guidelines effective November 1, 2017 (the "2017 Guidelines"), and the Medi-Share Guidelines in place at the time of the Daniels' November 2018 car accident would have been the Guidelines effective July 1, 2018 (the "2018 Guidelines").  For the Court's reference, CCM attaches a copy of the 2017 Guidelines as Exhibit B, a copy of the 2018 Guidelines as Exhibit C, and a declaration confirming their authenticity as Exhibit D.  Even though not attached to the Complaint, this Court may consider the 2017 Guidelines and 2018 Guidelines in ruling on this motion to dismiss, because the Court may consider documents not attached to the Complaint if they are referred to in the Complaint and are central to the plaintiff's claim.  *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." [internal alternations and quotations marks omitted].)

Despite the existence of these other versions of the Guidelines, the provisions on which CCM relies in this motion are nearly identical across all three versions.  *Compare* Compl., Ex. A at 39 *with* Ex. B at 47-48 *with* Ex. C at 43.)  Because the 2019 Guidelines are relied upon by the

Medi-Share is to bring Christians together to share God's blessings and to share each other's burdens. . . . Each month, the Members of Medi-Share contribute toward the Eligible Medical Bills of other Medi-Share Members, and . . . Eligible Medical Bills are paid with the funds of Members who faithfully share." (*Id*. at 10.) Membership is limited to those who are professing Christians, "attest to a personal relationship with the Lord Jesus Christ," and agree with a detailed Statement of Faith. (*Id*. at 8-9.) Members must also agree to abide by various conduct requirements aligned with the Christian faith. (*Id*. at 9.) The Guidelines govern the cost-sharing relationship and the members' relationship with CCM. (*Id*. at 7.) CCM's members vote on any substantive changes to the Guidelines and approve changes from time to time. (*Id*. at 6.)

The Daniels joined CCM/Medi-Share in January 2018, based on their application in December 2017. (Compl. ¶ 4; Ex. E & F.) The Complaint admits that the Daniels' relationship with CCM is governed by the Guidelines: "Plaintiff[s] paid a premium[4] to Medi-Share to be a Member of the healthcare sharing ministry program that was administered in accordance with the Medi-Share Program Guidelines." (Compl. ¶ 4.)

---

Daniels, CCM cites that edition without cross-reference to the 2017 and 2018 Guidelines, and references herein to the "Guidelines" are to the 2019 Guidelines unless otherwise stated.

[4] Members do not actually pay "premiums" as one would pay for insurance (which Medi-Share is not):

> Members do not have a monthly premium. Our Members have a monthly "share" . . . . Members deposit their monthly share into their individual sharing account. Unlike insurance, your monthly share goes directly into a fellow Member's sharing account to pay their medical bills. You can go online to see which bills are approved for sharing and who's benefitting from your monthly share.

(Ex. B at 7-8.) Another court has noted that Medi-Share is not, and cannot reasonably be construed as, insurance. *See Pettey v. Medi-Share*, No. 2:19-CV-59-KS-JCG, 2019 WL 4855165, at *2 (S.D. Miss. Oct. 1, 2019) ("Much of Plaintiff's pleading is of a conclusory nature, claiming that the Defendant is an insurer who issued a policy of insurance, when the [Medi-Share] Guidelines are replete with statements that Defendants [sic] is not an insurance company and Medi-Share is not an insurer." [footnote omitted]).

3

On November 25, 2018, the Daniels were traveling by car together and were rear-ended by another vehicle.  (*Id*. ¶ 3.)  The Daniels "submitted their medical bills to Medi-Share for sharing in accordance with the Guidelines . . . [but] Medi-Share denied all medical bills submitted by Plaintiffs for sharing, claiming that the Guidelines required that most of the bills be paid by the at-fault third party that caused the vehicle accident."  (*Id*. ¶¶ 5-6.)  The Daniels allege that they appealed the denial of bill sharing but contend that CCM did not respond and "a review of the appeal by Medi-Share was never completed."  (*Id*. ¶ 10.)

Count I of the Complaint seeks a declaratory judgment that "the medical bills submitted by Plaintiffs after November 25, 2018 are eligible for sharing."  (*Id*. at 3.)  Count II of the Complaint alleges that CCM breached the Guidelines when CCM did not approve cost sharing of their medical bills and seeks damages in the amount of the unpaid bills, namely, $158,973.  (*Id*. ¶ 13 & p. 4.)

The Guidelines expressly address how any disputes between members and CCM are to be resolved, taking an approach consistent with the members' and CCM's religious beliefs. (Guidelines at 39.)  Specifically, under the Guidelines the parties *expressly waived their right to file a lawsuit* against each other, and agreed that any disputes would be resolved by Biblically-based mediation, and, if mediation was not successful, by binding Biblically-based arbitration. The Guidelines provide:

> C. Biblically-Based Mediation and Arbitration
> As Christians, the Members and the staff of Christian Care Ministry believe that the Bible commands them to make every effort to live at peace and to resolve disputes with each other in private or within the Christian community in conformity with the biblical injunctions of 1 Corinthians 6:1-8[5], Matthew 5:23-24, and Matthew 18:15-20. Therefore, *the parties agree that any claim or dispute*

---

[5] 1 Corinthians 6:1-8 reads in part, "If any of you [as Christian believers] has a dispute with another, do you dare to take it before the ungodly for judgment instead of before the Lord's people?"

arising out of, or related to, this agreement or any aspect thereof, including claims under federal, state, local statutory or common law, the law of contract or law of tort, that may remain after a Member has exhausted his appeals provided for in Section XIII. B., including a determination whether this arbitration provision is valid, *shall be settled by biblically based mediation*. The mediation shall be conducted in accordance with the Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation, a division of Peacemaker Ministries (complete text of the rules is available at HisPeace.org), with each party to bear their own costs, attorney's fees and 50% of the mediator's fee, and with the mediation filing fee to be borne by CCM.

      *If resolution of the dispute and reconciliation do not result from mediation, the matter shall then be submitted to an independent and objective arbitrator for binding arbitration.* The parties agree that the arbitration process will also be conducted in accordance with the Rules of Procedure for Christian Conciliation, with each party to bear their own costs, attorney's fees, and 50% of the arbitrator's fee, and with the arbitration filing fee to be borne by CCM. Each party shall agree to the selection of the arbitrator. If there is an impasse in the selection of the arbitrator, the parties agree that the Institute for Christian Conciliation shall choose the arbitrator.

      The parties agree that these methods of dispute resolution shall be the sole remedy for any controversy or claim arising out of this agreement, and they *expressly waive their right to file a lawsuit* against one another in any civil court for such disputes, except to enforce a legally binding arbitration decision.

(Guidelines at 39 [emphasis added]; *see also* Ex. B at 47-48 [same]; Ex. C at 43 [same].)

The Guidelines also reiterate elsewhere that members do not have legal claims against

CCM for payment of their medical bills that could be asserted in court:

      D.  No Ministry or Other Member Liability
      . . . Neither CCM nor other Members guarantee or shall be liable for the payment of a Member's medical bill. . . .
      Neither CCM, Medi-Share nor its Members are insurance or an insurance company. The payment of your medical bills through Medi-Share or otherwise is not guaranteed in any way. Medi-Share is not, and should never be construed as, a contract for insurance or a substitute for insurance.  There is no transfer of risk for any purpose from a Member to CCM or from a Member to other Members; nor is there a contract of indemnity between CCM and any Member or between the Members themselves.

(Guidelines at 7; *see also* Ex. B at 11 [same]; Ex. C at 11 [same].) [6]

---

      [6] To the extent that the Daniels are pursuing a declaratory judgment as if the Guidelines are an insurance policy or pursuing a breach of contract claim as if CCM is an insurer that has

The provisions of the Guidelines are alone sufficient evidentiary basis for the granting of CCM's motion in full, but there is more.  Upon joining CCM as members, both Joni and Larry Daniels separately completed and signed a "Testimony & Commitment" form (the "Commitment"), copies of which are attached as Exhibits E and F.  The Commitment provides:

> **By Joining Medi-Share, I understand and agree to the following:**
>
> 1. *I have carefully read and commit to abide by all provisions stated in the Medi-Share Guidelines*. . . .
> . . . .
> 2.  I understand that . . . [CCM] matches a Medi-Share member's medical bills with other members who have volunteered, in faith, to share in meeting needs through the biblical concept of Christian mutual sharing. I realize and accept that . . . CCM does not pay nor is it liable for the payment of any medical bills.
> . . . .
> 6.  I agree that in cases where all administrative appeals have been exhausted and after an appeal process, *any and all remaining disputes will be settled solely as follows: by biblically-based mediation, not in a secular court*. If resolution of the dispute and reconciliation does not result from mediation, the matter shall *then be submitted to an independent and objective arbitrator for binding arbitration*. I agree that suing fellow Christians, including Christian ministries, is contrary to scripture (1 Cor. 6:1-8); therefore, *I will bring no suit, legal claim or demand of any sort against CCM in the civil court system*, with the sole exception of enforcing any favorable arbitration award or mediated agreement.
> . . . .

wrongfully denied insurance benefits, the Guidelines expressly state that there can be no such claims. The Guidelines clearly and repeatedly state that Medi-Share is not a form of insurance, is not regulated as insurance, and is a voluntary sharing effort among members that is simply administered by CCM.  (*See, e.g.,* Guidelines at 2, 7, 13, 35, 37, 44.)  For example, the following notice appears on the first page of text in the Guidelines:

> NOTICE: Medi-Share is not insurance or an insurance policy nor is it offered through an insurance company. Whether anyone chooses to assist you with your medical bills will be totally voluntary, as no other member will be compelled by law to contribute toward your medical bills. As such, Medi-Share should never be considered to be insurance. Whether you receive any payments for medical expenses and whether or not Medi-Share continues to operate, you are always personally responsible for the payment of your own medical bills. Medi-Share is not subject to the regulatory requirements or consumer protections of your particular State's Insurance Code or Statutes.

(*Id*. at 2.)

6

I Understand and Agree

**Signature**
I declare that the information contained herein is complete and true to the best of my knowledge.
Agreement terms and conditions accepted and signed by <u>Joni Lynne Daniel</u>
    [and in Larry Daniel's document, ". . . by <u>Larry Gene Daniel</u>"]

(Ex. E & F at 2-3 [bold in original; italics added].)  The Commitment, like the Guidelines, communicated the Daniels' unequivocal agreement that Christian mediation and arbitration would be the exclusive remedy for any dispute with CCM.

Because the Guidelines that the Daniels seek to enforce and the Commitment prohibit the filing of a lawsuit against CCM and require Christian mediation and arbitration of any disputes, this Court must dismiss this lawsuit with prejudice.

III.    ARGUMENT

    *A.*    *The Law Strongly Favors Alternative Dispute Resolution, Including Arbitration*

Federal law (and state law) strongly favors alternative dispute resolution, including arbitration.  *See Epic Sys. Corp. v. Lewis*, ___ U.S. ___, 138 S. Ct. 1612, 1621 (2018) (noting the "liberal federal policy favoring arbitration agreements"); *Kindred Nursing Centers Ltd. Partnership v. Clark*, ___ U.S. ___, 137 S. Ct. 1421, 1424 (2017) ("The Federal Arbitration Act . . . requires courts to place arbitration agreements on equal footing with all other contracts." [internal brackets and quotation marks omitted]).[7]  Arbitration clauses are to be generously construed; "any doubts concerning the scope of arbitral issues should be resolved in favor of

---

[7] *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (describing Supreme Court precedent on arbitration clauses and under the Federal Arbitration Act as "embodying a national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" [alterations, quotation marks, and citations omitted]); *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 231, 238 (2013) (requiring enforcement of an arbitration provision despite the fact that "the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery").

arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (internal quotations marks omitted).  Seventh Circuit cases have also repeatedly enforced arbitration agreements in a variety of circumstances.  *See, e.g.*, *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F. 3d 705 (7th Cir. 2019) (affirming decision compelling arbitration of employment claims under employer's arbitration policy); *Hunt v. Moore Brothers, Inc.*, 861 F. 3d 655, 658 (7th Cir. 2017) (district court's dismissal of lawsuit based on arbitration clause was entirely appropriate based on "long line of Supreme Court decisions upholding the enforceability of arbitration clauses"); *Gore v. Alltell Communications, LLC*, 666 F.3d 1027, 1030 (7th Cir. 2012) (determining that the arbitration provision in one contract between the parties compelled arbitration of a claim arising under a different contract between the parties).

   B.   *The Parties Unequivocally Agreed to Alternative Dispute Resolution and Further Agreed Not to Sue Each Other*

   The allegations of the Complaint plainly establish the parties' agreement that alternative dispute resolution would be their exclusive remedy and that neither would bring legal claims against the other in court.  The basis of the Daniels' claims is the Guidelines.  (*See* Compl. ¶¶ 4-13 & Ex. A.)  The Daniels admit that the Guidelines govern their relationship with CCM.  (*See id*. ¶¶ 4, 7, 10, 12 & Ex. A.)  The Daniels attached to their Complaint the very document that contains their agreement to pursue alternative dispute resolution and to not bring claims in court—and assert that the document (the Guidelines) is a binding and enforceable contract.  (*See id*. ¶¶ 4, 12 & Ex. A.)  The Daniels' Complaint even cites (for other reasons) the page of the Guidelines containing their agreement to pursue binding arbitration and not litigation.  (*See id*. ¶ 10, citing Ex. A at "pp. 38-39" [where page 39 contains the Guidelines section entitled "Biblically-Based Mediation and Arbitration"].)

The alternative dispute resolution provisions are also unambiguous.  The Guidelines state that the parties are Christians and that they "believe that the Bible commands them . . . to resolve disputes with each other in private or within the Christian community," not in a secular court. (Ex. A at 39; *see also* Ex. E & F at 2.)  The Daniels expressly "agree[d] that any claim or dispute arising out of, or related to, this agreement [i.e., the Guidelines] . . . shall be settled by biblically based mediation."  (*Id*.)  The parties identified an agreeable third-party service to conduct the mediation (the Institute for Christian Conciliation ["ICC"]) and identified the procedural rules by which the mediation would be conducted (i.e., the Rules of Procedure for Christian Conciliation of the ICC [the "ICC Rules"]).  (*Id*.)  The Daniels further agreed, "If resolution of the dispute and reconciliation do not result from mediation, the matter shall then be submitted to an independent and objective arbitrator for binding arbitration."  (*Id*.)  As to the binding arbitration, the Daniels also agreed to follow the ICC Rules, with the arbitrator to be selected mutually by the parties, or lacking an agreement, chosen by the ICC.  (*Id*.)  Finally, the parties concluded their agreement with the following unequivocal statement:

> The parties agree that *these methods of dispute resolution shall be the sole remedy* for any controversy or claim arising out of this agreement [i.e., the Guidelines], and they *expressly waive their right to file a lawsuit* against one another in any civil court for such disputes, except to enforce a legally binding arbitration decision.

(Guidelines at 39 [emphasis added]; *see also* Ex. B at 47-48 [same]; Ex. C at 43 [same].)

As if all of this were not enough, the Daniels agreed elsewhere in the Guidelines that they would not have legal claims against CCM for payment of their medical bills that could be asserted in court:  "Neither CCM nor other Members guarantee or shall be liable for the payment of a Member's medical bill. . . .  The payment of your medical bills through Medi-Share or otherwise is not guaranteed in any way."  (*Id*. at 7.)  Furthermore, as noted above, the

Commitment signed by both Daniels reiterated these same agreements and prohibitions, in a

streamlined document just over two pages in length.  (*See* Ex. E & F at 2-3.)

Thus, the Daniels' agreement to arbitrate their claims, and not to sue CCM, is beyond

question.

> C.     *Because the Daniels Agreed that Binding Arbitration Would Be Their Exclusive Legal Remedy, Their Complaint Must Be Dismissed Under Rule 12(b)(1), 12(b)(2), and 12(b)(3)*

The Daniels' lawsuit must be dismissed because they agreed that their exclusive legal

remedy would be Christian mediation and arbitration and agreed that they would not pursue

claims in court.  Dismissal is warranted under three subsections of Rule 12.

Dismissal is required under Federal Rule of Civil Procedure 12(b)(1) because this Court

lacks subject-matter jurisdiction over the Daniels' claims.  Under the Guidelines and the

Commitment, the parties agreed that any disputes would be handled outside the secular court

system and that no court would have jurisdiction over any legal claims between them.  (*See*

Compl., Ex. A at 39; Ex. E & F at 2-3.)  Thus, dismissal is appropriate for lack of subject-matter

jurisdiction.  *See Cloutier v. GoJet Airlines, LLC*, No. 19-1322, ___ F.3d ___, 2021 WL

1686493, at *5 n.2 (7th Cir. Apr. 29, 2021) (motion to dismiss for lack of subject matter

jurisdiction filed under Fed. R. Civ. P. 12(b)(1) based on arbitration provision in the parties'

collective bargaining agreement); *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d

1101, 1111 (D. Colo. 1999) (breach of contract claims dismissed under Rule 12(b)(1) because

the plaintiff had agreed to an ICC Christian mediation and arbitration provision nearly identical

to the Guidelines' provision); *Lorenz v. CSX Transp., Inc.*, 980 F.2d 263 (4th Cir.1992)

(dismissing action on Rule 12(b)(1) motion based on binding arbitration provisions).

Similarly, dismissal is warranted under Rule 12(b)(2) because this Court lacks personal

jurisdiction over CCM.  The parties agreed under the Guidelines and the Commitment that the

603574527.2

court system would not be an appropriate adjudicator of any dispute that arose and that no court would have personal jurisdiction over them relating to a dispute under the Guidelines.  (*See* Compl., Ex. A at 39; Ex. E & F at 2-3.)  Thus, the Daniels' lawsuit should be dismissed for lack of personal jurisdiction over CCM.  *See Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F. 3d 887, 890 (7th Cir. 2020) (motion to dismiss brought under Rule 12(b)(2) and 12(b)(3) based on contractual arbitration provision).

Dismissal is also required under Rule 12(b)(3) because venue is not proper in this Court. Under the Guidelines and the Commitment, the parties agreed that the venue of any legal disputes between them would be in Christian mediation and arbitration, not in any court.  (*See* Compl., Ex. A at 39; Ex. E & F at 2-3.)  Therefore, dismissal is warranted for improper venue. *See Brickstructures,* 952 F. 3d at 890 (motion to dismiss brought under Rule 12(b)(2) and 12(b)(3) based on contractual arbitration provision); *Harris v. Aliera Healthcare, Inc.*, No. 20-cv-492-JPS, ___ F. Supp. 3d ___, 2021 WL 763856 (E.D. Wis. Feb. 26, 2021) (motion to dismiss pursuant to Rule 12(b)(3) based on binding arbitration provision).

Thus, the Complaint should be dismissed with prejudice pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(3).

> D.    *Because the Daniels Agreed that Binding Arbitration Would Be Their Exclusive Legal Remedy, This Court Should Compel Arbitration under the Federal Arbitration Act and Then Dismiss This Case*

Because under the Guidelines and the Commitment the Daniels agreed to arbitrate any claims they had against CCM (and agreed not to sue CCM), this Court should compel the Daniels to arbitrate their claims as required by the Guidelines.

The presence of the arbitration provision in the Guidelines and the Commitment implicates the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").  The FAA mandates enforcement of valid arbitration agreements.  *See* 9 U.S.C. § 2 ("A written provision in any . . .

11

contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").  If a party does not comply with its arbitration agreement, the opposing party may file a motion in federal court to compel arbitration, which the court must immediately consider and grant if the presence of the arbitration agreement is not in question.  *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [an appropriate federal district court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . [If] the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").  Because there is no debate that the parties agreed to arbitrate (after first mediating) any controversies between them, this Court should enter an order compelling the Daniels to arbitrate any claim they wish to pursue against CCM, and then dismiss this case.  *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F. 3d 705 (7th Cir. 2019) (affirming district court decision compelling arbitration of employment claims under employer's arbitration policy, which it communicated to the employee by email, and as to which the employee never opted out); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (reversing district court's denial of motion to compel arbitration; "if the parties have an arbitration agreement and the asserted claims are within its scope, [a] motion to compel [arbitration] cannot be denied"); *Pettey v. Medi-Share*, No. 2:19-CV-59-KS-JCG, 2019 WL 4855165 (S.D. Miss. Oct. 1, 2019) (granting motion to compel arbitration pursuant to the arbitration provisions of the CCM Guidelines and then dismissing the case).

E.      *The Daniels' Only Apparent Counterarguments Are Nonstarters*

The Complaint suggests that the Daniels believe they were excused from pursing the agreed mediation and arbitration remedies because, in their view, "no response was provided by [CCM] to Plaintiffs' [internal] appeal." (Compl. ¶ 10.)  The Daniels assert, "Based on the non-responsiveness of [CCM], Plaintiffs could not proceed with the other steps outlined in the Appeals Section [i.e., Christian mediation and arbitration]." [8]  (*Id.*)  But regardless of whether CCM was as responsive as it should have been (an issue that CCM disputes), the Daniels still agreed to, and were required to, pursue mediation and arbitration.  In fact, mediation and arbitration were agreed to *specifically for* situations in which a party has allegedly "breached" the Guidelines.  If a party to an agreement could claim that their opponent's breach of the agreement excused the nonbreaching party from pursuing an agreement to mediate or arbitrate, arbitration provisions would be rendered meaningless, because that is precisely the reason for dispute resolution provisions: *to resolve disputes.  See Hunt v. Moore Brothers, Inc.*, 861 F. 3d 655, 658 (7th Cir. 2017) (the plaintiff "asserted that [she] had no obligation to comply with the arbitration clause because [defendant] had materially breached the Agreements. . . . [B]y that reasoning no one would ever arbitrate a contract dispute, because the arbitration agreement would go up in smoke as soon as the dispute arose."); *B.A.P., LLP v. Pearman*, 250 P. 3d 332, 340-42 (Okl. App. Ct. 2011) (failure by party to comply with certain pre-arbitration procedures did not result in waiver of right to compel arbitration).

Based on communications CCM's counsel has had with the Daniels' counsel after the filing of this lawsuit, CCM believes that the Daniels may also try to argue that the parties'

---

[8] To state the obvious, if the Daniels believed that CCM had improperly denied them an internal appeal or believed that CCM's customer service personnel had not been sufficiently responsive, the next step was not litigation, but initiation of a mediation request with either CCM's legal department or with the Institute for Christian Conciliation directly.  Neither the Daniels nor their counsel took any such step.

13

Christian mediation and arbitration agreement is somehow unenforceable.  This argument too is a nonstarter.  Parties may agree to nearly any form of dispute resolution, given the extraordinarily broad right to contract.  *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705 (7th Cir. 2019) (arbitration agreements are a straightforward matter of contract law).  In any case, the very provisions to which CCM and the Daniels agreed, namely, invoking Christian resolution principles and adopting the ICC's Rules of Procedure for Christian Conciliation, have been repeatedly upheld by the courts.  *See, e.g., Harris,* 2021 WL 763856 (granting motion to compel arbitration under arbitration provisions that were nearly identical to the provisions in the Guidelines, and dismissing lawsuit); *Pettey,* 2019 WL 4855165 (granting CCM's motion to compel arbitration pursuant to the Guidelines' arbitration provisions in suit against CCM for unpaid medical bills related to a car accident); *General Conf. of the Evangelical Methodist Church v. Evangelical Methodist Church of Dalton, Ga., Inc.*, 807 F. Supp. 2d 1291 (N.D. Ga. 2011) (compelling arbitration of dispute between a local church and the denomination it wished to leave, based on arbitration provision adopting the ICC Rules); *B.A.P*, 250 P.3d at 340-42 (reversing trial court's denial of motion to compel arbitration pursuant to ICC Rules); *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101 (D. Colo. 1999) (granting motion to dismiss under Rule 12(b)(1) based on arbitration provision adopting the ICC Rules).

 In all events, if the Daniels wish to challenge the validity of the arbitration provision to which they agreed, they expressly agreed that such threshold issue would also be resolved by an arbitrator, not by a court of law:

> Therefore, the parties agree that any claim or dispute . . . *including a determination whether this arbitration provision is valid,* shall be settled by biblically based mediation.

(Compl., Ex. A at 39.)  Agreements to have an arbitrator decide the validity of an arbitration provision are fully enforceable.  *See Harris,* 2021 WL 763856, *5-7 (deciding that "the issue of arbitrability must be decided by the arbitrator" pursuant to the parties' agreement and in light of the ICC Rules).

With no valid challenges to the alternative dispute resolution provisions to which they agreed, the Daniels should be compelled to arbitrate any disputes they have with CCM.

F.      *Even in the Absence of the Parties' Binding Arbitration Agreement, the Complaint Would Need to Be Dismissed Under Rule 12(b)(6) for Other Reasons*

Even in the absence of the parties' binding mediation and arbitration agreement, the Daniels' Complaint would need to be dismissed for failure to state a claim.

First, regardless of whether the Daniels agreed to resolve all disputes through Christian mediation and arbitration, they plainly agreed not to sue CCM.  The Guidelines state the parties "expressly waive their right to file a lawsuit against one another in any civil court."  (Compl., Ex. A at 39.)  The Commitment says, "I will bring no suit, legal claim or demand of any sort against CCM in the civil court system . . . ."  (Ex. E & F at 2.)  Because the Daniels agreed not to sue CCM, the Daniels' Complaint fails to state claim and must be dismissed.  *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963 (7th Cir. 2013) (affirming Rule 12(b)(6) dismissal of claims barred by release).

Second, Count I seeking declaratory relief fails for another reason.  "The purpose of declaratory judgment is to allow the court to address a controversy one step sooner than normally, after the dispute has arisen but before steps are taken which give rise to a claim for damage or other relief."  *AEH Constr., Inc. v. Dep't of Labor*, 318 Ill. App. 3d 1158, 1161 (3d Dist. 2001) (internal quotation marks omitted).  This purpose is not present in the case at bar. The Daniels' Complaint does not attempt to settle early a dispute about the rights of the parties

15

before the dispute ripens into economic losses or other harms; the Complaint complains about unpaid medical bills arising out of a car accident that occurred two-and-a-half years ago, and pleads with specificity the damages that they have allegedly already suffered (i.e., "$158,973.10 in medical bills"). (Compl. ¶ 13.) Thus, the Daniels have no possible claim for declaratory relief, and Count I would need to be dismissed even if this case survived all of CCM's other arguments. *See Bruemmer v. Compaq Computer Corp.*, 329 Ill. App. 3d 755, 765-66 (1st Dist. 2002) (affirming dismissal of declaratory judgment claim for failing to me the requirements for such a claim).

   G.    *CCM Is Entitled to Recover Its Attorneys Fees for Having to Defend This Matter in Court Because the Daniels Unequivocally Agreed Not to Sue CCM*

   As is clear from the preceding discussion, the Daniels had (and have) no good faith basis for filing this lawsuit. Regardless of the types of claims, or strength of claims, the Daniels believe they have against CCM, the exclusive route to resolving those claims was through the agreed-upon Christian mediation and arbitration. Moreover, the Daniels each expressly agreed, in a signed Commitment and under the Guidelines, not to sue CCM. Yet, despite the prohibition on suing CCM, the Daniels' counsel proceeded with a lawsuit, knowing that the very Guidelines on which the Daniels' claims were based barred this suit.

   28 U.S.C. § 1927 prohibits attorneys from "multipl[ying] the proceedings in any case unreasonably and vexatiously" and permits an award of attorneys fees to the party affected by the wrongful conduct, assessed against the responsible attorneys. *See Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708 (7th Cir. 2014) ("*Lightspeed I*") (sanctions under Section 1927 are proper when a claim lacks a plausible legal or factual basis). An award under Section 1927 can be based on objectively unreasonable conduct or subjective bad faith. *See, e.g., Boyer v. BNSF Rwy. Co.*, 824 F.3d 694, 708 (7th Cir. 2016) (reversing the denial of Section 1927 sanctions;

16

sanctions were required because plaintiff's counsel could not have reasonably believed that his

choice of venue was appropriate), *modified on rehearing on other grounds*, 832 F.3d 699 (7th

Cir. 2016); *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (court has

discretion to impose Section 1927 sanctions when an attorney has acted in an "objectively

unreasonable manner" or has pursued a claim that is "without a plausible legal or factual basis

and lacking in justification" [internal quotation marks omitted]).[9]   Sanctions "should encompass

all expenses, whenever incurred, that would not have been sustained had the opponent conducted

itself properly."  *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 506-08 (7th Cir. 2016);

*Lightspeed I*, 761 F.3d at 708-10.

    This Court also has the inherent power to award attorneys fees for the bringing of

meritless claims, for continuing to prosecute meritless claims, or for acting in bad faith.  *See,*

*e.g., Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ___, 137 S. Ct. 1178, 1186 (2017) (courts

have inherent power to award attorneys fees for "conduct which abuses the judicial process").[10]

---

[9] *See also Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n.6 (7th Cir. 1990)
(section 1927 "impose[s] a continuing duty upon attorneys to dismiss claims that are no longer
viable"); *In re TCI Ltd.*, 769 F.2d 441, 445-46 (7th Cir. 1985) ("If a lawyer pursues a path that a
reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the
conduct is objectively unreasonable and vexatious"; subjective bad faith or malice will support
section 1927 sanctions when a lawyer pursues an otherwise colorable claim for an improper
purpose; "Even those who prevail may be liable for fees if in bad faith they cause their
adversaries to bear excessive costs"); *Claiborne v. Wisdom*, 414 F.3d 715, 721-724 (7th Cir.
2005) (Section 1927 can be violated by extremely negligent, reckless, or indifferent conduct;
central issue is the objective unreasonableness of the attorney's actions, not the absence evil
intent); *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (reversing the denial
of Section 1927 sanctions when "a reasonably careful attorney should have known the [claim
asserted] was without merit").

[10] *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991) (court has inherent power
to sanction misconduct); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775-782 (7th Cir. 2016)
(same); *Boyer*, 832 F.3d at 701-02 (court has inherent power to sanction unreasonable conduct,
even when it originates in another forum); *Carr v. Tillery*, 591 F.3d 909, 919-20 (7th Cir. 2010)
(district court erred in denying motions for sanctions; even if Section 1927 did not apply to the

Under the court's inherent power, fees may be awarded against a party, the party's counsel, or both. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-47 (1991) (attorneys fees award imposed on the party); *Boyer*, 824 F.3d at 708 (attorneys fees award imposed on counsel).

The conduct of the Daniels' counsel in filing this lawsuit meets the standards for sanctions under Section 1927 and the inherent power of the court.  The lawsuit lacked (and lacks) a plausible factual and legal basis and was (and is) objectively unreasonable.  This case bears similarity to *Hunt v. Moore Brothers, Inc.*, 861 F. 3d 655 (7th Cir. 2017), in which the Seventh Circuit affirmed the district court's award of monetary sanctions award against an attorney who filed a lawsuit despite the existence of contractual arbitration clause.  The plaintiff, a truck driver, had signed an Independent Contractor Operating Agreement with the defendant, which contained an agreement to arbitrate any disputes.  *Id*. at 657-58.  When the relationship soured, the driver hired counsel, who decided to file suit instead of pursuing arbitration.  *Id*.  The defendant filed a motion to compel arbitration, which the court granted.  *Id*. at 658.  When the driver's counsel return to the court with various arguments about why the arbitration agreement was unenforceable, the defendant sought sanctions against counsel pursuant to Section 1927 and the inherent power of the court, which the district court granted.  *Id*.

The Seventh Circuit affirmed.  Sanctions were warranted, it held, despite the various arguments counsel made as to the alleged unenforceability of the arbitration clause, because "[t]he fundamental flaw underlying [counsel's] entire course of conduct is her disregard of the long line of Supreme Court decisions upholding the enforceability of arbitration clauses exactly like the one in the [parties' agreement]."  *Id*. at 659.  The Seventh Circuit found counsel's "effort

---

particular conduct at issue, trial court had the inherent power to sanction the party for abusive litigation); *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927-28 (7th Cir. 2004) (district court could impose sanctions in the form of attorneys fees under its inherent power even if procedural issues prevented sanctions from being awardable under Rule 11).

to avoid arbitration was doomed," and affirmed the award of sanctions under Section 1927, finding "no need to consider whether the sanctions imposed by the district court were also justified under the court's inherent power."  *Id*. at 660-61.  As in *Hunt*, the Daniels (and their counsel) have no legitimate arguments to make to nullify the parties' agreements to arbitrate and not pursue claims in court, and sanctions are therefore warranted.

Making an award of attorneys fees even more justified is the fact that counsel for CCM, without any obligation to do so, gave the Daniels' counsel four clear warnings that the lawsuit was improper and asked that it be immediately withdrawn.  In a telephone conversation with attorney Kara Wade on May 7, 2021, the undersigned explained CCM's position that the mediation and arbitration provisions of the Guidelines barred the Daniels' suit.  By lengthy letter later that day, the undersigned reiterated CCM's position and concluded:  "As mentioned [during the earlier phone conversation], if CCM is required to defend the lawsuit, it may seek to recover its attorneys fees for having to do so, given the clarity of the remedies provision in the Medi-Share Guidelines."  Then again, in a telephone conversation with attorney Chris Koester on May 14, 2021, the undersigned explained CCM's position and warned that CCM might seek fees if the lawsuit was not withdrawn.  The undersigned followed up the conversation with an email later that day, which stated:

> CCM continues to request that the Daniels immediately dismiss their lawsuit (without prejudice is acceptable) because their claims do not belong in court. CCM is now preparing the appropriate defensive filings in federal court and, as also mentioned in my May 7 letter, CCM will likely be seeking recovery of its attorneys fees for having to defend this matter in court, given the clarity of the remedies provision in the Medi-Share Guidelines (under which the Daniels agreed not to sue CCM but rather pursue Christian mediation and arbitration of any dispute they had with CCM).

Despite these warnings, the Daniels and their counsel did not withdraw the lawsuit, and eventually communicated to the undersigned on May 21 (the day this motion was due), "[W]e

603574527.2

are hesitant to simply dismiss the lawsuit due to the lack of previous communication with your client and the inefficiency if your client simply continues to maintain its position."

By forcing CCM to defend this matter in court, the Daniels' counsel have knowingly disregarded their obligations not to bring meritless claims, and CCM is entitled to recover from counsel the attorneys fees it has incurred, pursuant to Section 1927 and the inherent power of this court. *See Hunt*, 861 F. 3d at 657-61.

IV.     CONCLUSION

For the reasons stated above, Defendant, Christian Care Ministry, Inc., requests that this Court enter an order (1) compelling Joni and Larry Daniels to pursue mediation and arbitration as provided for in the Medi-Share Guidelines as to any legal claims they wish to pursue against CCM, (2) dismissing the Daniels' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), and (3) assessing monetary sanctions against the Daniels' counsel for the attorneys fees expended by CCM in defending the lawsuit brought against CCM, in an amount to be determined by separate fee petition filed by CCM within 14 days after the Court's order awarding fees.

Dated:  May 21, 2021                          Respectfully submitted,


                                               /s/ Christian Poland
                                              One of the Attorneys for Defendant,
                                              Christian Care Ministry, Inc.

Christian Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, Illinois 60601
312-602-5000
312-602-5050 [fax]
christian.poland@bclplaw.com

## CERTIFICATE OF SERVICE

Christian Poland, one of the attorneys for the Defendant, states that on May 21, 2021, he served a true and correct copy of the foregoing document upon counsel for Plaintiffs by causing said document to be delivered to them via the Court's ECF system, addressed as follows:

> Christopher A. Koester
> Kara J. Wade
> Taylor Law Offices, P.C.
> 122 E. Washington Ave.
> Effingham, Illinois  62401
> koester@taylorlaw.net
> wade@taylorlaw.net

 /s/ Christian Poland

21

603574527.2